## FRAER v. WASHINGTON.

(Circuit Court of Appeals, Eighth Circuit.   October 8, 1903.)

No. 1,836.

1. INDIAN LEASES—EFFECT OF CURTIS ACT.
Act June 28, 1898, c. 517, 30 Stat. 495, known as the "Curtis Act," which gives the owner of improvements on a lot in the Indian Territory a preferred right to purchase the same after it shall have been appraised, did not affect the obligation of a white man, who was at the time of its passage in possession of a lot under a lease from an Indian, to restore possession to the lessor on the termination of the lease in accordance with its terms.

2. LANDLORD AND TENANT—RIGHTS OF LANDLORD—ACTION OF UNLAWFUL DETAINER.
A lessor who stipulates to pay the lessee the value of improvements made by him at the expiration of the term does not thereby disable himself from bringing an action of unlawful detainer, where the tenant at the end of the term refuses to accept the payment tendered or to surrender possession, and cannot be required to first bring a suit in equity to compel the lessee to accept such payment.

3. SAME—STATUTE OF INDIAN TERRITORY.
Mansf. Dig. § 4174 (Ind. T. Ann. St. 1899, § 2854), in force in the Indian Territory, which provides that an action by a landlord to recover possession of the premises on account of nonpayment of rent shall abate on a tender of the rent due by the tenant before judgment, has no application to an action to recover possession unlawfully withheld by the tenant after the term has expired.

In Error to the United States Court of Appeals in the Indian Territory.

C. L. Herbert, E. A. Walker, and H. M. Cannon, for plaintiff in error.

C. C. Potter, C. B. Potter, and W. D. Potter, for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

THAYER, Circuit Judge.   This case originated in the Indian Territory, and comes to this court on a writ of error from the Court of Appeals of that territory.   The record discloses that J. C. Washington, the defendant in error, is a member of the Chickasaw tribe of Indians, and a resident of the Indian Territory, and that on January 1, 1898, he leased to James Fraer, the plaintiff in error, who is not a member of any tribe of Indians, a lot of land 25 feet in width by 140 feet in depth, which fronted on Main street, in the town of Marietta, within the Indian Territory.   By the terms of said lease the lessee acquired the right to occupy the demised premises for the term of one year from and after January 1, 1898, with the right to renew the lease for another year at the expiration of the first term. The lease contained a provision to the effect that the lessor, Washington, could only repossess himself of the demised premises on the expiration of the lease by paying to the lessee, Fraer, the value of the improvements which the lessee had made on the demised premises, and that upon making such payment he should be entitled to the

possession of the property. The complaint which was filed by Washington, who was the plaintiff below, was in the form of an action of unlawful detainer, and alleged, in substance, that at the expiration of the year 1898 Fraer, the lessee, declined to renew the lease for another year; that the value of the improvements erected by him during his term was the sum of $700; that on January 2, 1899, he had tendered to Fraer, the lessee, the sum of $800 in payment for his improvements, which was a sum more than they were worth, but that the defendant had declined to accept the sum tendered, and was wrongfully, unlawfully, and forcibly detaining the possession of the property, and refusing to permit the plaintiff to enter upon the same. Washington further alleged that after the refusal of the defendant below to re-rent the premises he had given the defendant written notice to vacate the same and surrender the possession to the plaintiff. The complaint also contained a tender of the alleged value of the improvements and an offer to pay the sum tendered into court. The trial below, which was before a jury, resulted in a verdict and judgment in favor of the plaintiff, which judgment was affirmed on appeal by the Court of Appeals in the Indian Territory. The judgment complained of is to the following effect: That the plaintiff, Washington, have and recover from the defendant, Fraer, the lot above described, situated in the town of Marietta, in the Chickasaw Nation, and that the money theretofore deposited by the plaintiff to pay for the improvements which had been made on the demised premises by the lessee be delivered to him.

The principal contention on the part of the plaintiff in error is to the following effect: That an act of Congress approved June 28, 1898, after the lease now in question was executed (30 Stat. 495, c. 517), operated to destroy all of the lessor's contractual rights under the lease, and to extinguish whatever interest, possessory or otherwise, he may have had in the demised premises when the lease was executed. In other words, it is insisted, in substance, that although Washington, the lessor, may have been lawfully in possession of the demised lot on January 1, 1898, pursuant to the right of occupancy accorded to Indians by the tribes to which they belonged, and may have been induced to surrender such possession to the lessee for the term of one year, in consideration of the latter's promise to pay a stipulated rent, and to restore the possession to the lessor at the end of the term, provided he was paid the value of all improvements which he might erect in the meantime, yet the subsequent passage of the act of Congress on June 28, 1898, commonly called the "Curtis Act," not only released the lessee from all of his promises made to the lessor, but operated to vest the lessee with whatever rights and privileges incident to possession would have belonged to the lessor had he not been induced to relinquish his possession to the lessee. This claim is based primarily on sections 15 and 16 of the Curtis act (30 Stat. 500, 501) and certain paragraphs of an agreement between the United States and the Choctaw and Chickasaw Indian tribes, commonly termed the "Atoka Agreement," which is set forth in the act of Congress, and as therein amended was ratified. 30 Stat. 505, 508.

The fifteenth section of the act in question, after providing for the appointment of a commission to survey and lay out town sites within the territory occupied by the Chickasaw, Choctaw, Creek, and Cherokee tribes of Indians, and to make plats thereof, further provided, in substance, that all town lots should be appraised by said commission at their true value, excluding improvements; that separate appraisements should be made of all improvements thereon; that no such appraisement should be effective until approved by the Secretary of the Interior; and that in case of disagreement by the members of the commission as to the value of any lot the Secretary of the Interior might fix the value thereof. It was further declared in the same section that "the owner of the improvements upon any lot other than fencing, tillage or temporary buildings, may deposit in the United States Treasury, St. Louis, Missouri, one half of such appraised value; ten per centum within two months and fifteen per centum more within six months after notice of appraisement, and the remainder in three equal annual installments thereafter, depositing with the Secretary of the Interior one receipt for each payment and one with the authorities of the tribe and such deposit shall be deemed a tender to the tribe of the purchase money for such lot." The same section of the act further provided, in substance, that, if the owner of such improvements on any lot failed to make deposit of the purchase money in the manner aforesaid, then such lot might be sold in the manner provided in the act for the sale of unimproved lots, and that lots which were not improved should belong to the tribe, and should be appraised, and that, after the approval of the appraisement by the Secretary of the Interior and due notice, should be sold to the highest bidder at public auction, by the commission, for not less than their appraised value, unless otherwise ordered by the Secretary of the Interior. Following these provisions, which are found in the fifteenth section of the act, the sixteenth section declared, in substance, that it should be unlawful for any person, after the passage of the act, to receive for his own use or for the use of any one else any royalty on oil, coal, asphalt, or other mineral, or on any timber or lumber or any other kind of property whatsoever, "or any rents on any lands or property belonging to any one of said tribes or nations in said territory, or for any one to pay to any individual any such royalty or rents or any consideration therefor whatsoever," and that all royalties and rents thereafter payable to the tribe should be paid, under such regulations as might be prescribed by the Secretary of the Interior, into the treasury of the United States to the credit of the tribe to which they belonged.

We feel constrained to hold that the Curtis act did not affect the rights of the parties to this litigation in the manner asserted and above stated. When the lease was executed, Washington, the lessor, being a member of the Chickasaw tribe of Indians, had the right to occupy the demised premises according to the customs and usages of his tribe. Fraer, the lessee, on the other hand, not being a member of any Indian tribe, had no such right. He had at that time no interest in the lot, either present, future, or contingent, such as a court of law would recognize or enforce; and after the execution of the lease

he could only uphold his right of occupancy, if at all, by virtue of the provisions of the lease which he had succeeded in obtaining. By accepting the lease and entering thereunder as a tenant of the lessor, he certainly admitted the lessor's right of occupancy, and, according to well-established rules of law, should be estopped from denying it or challenging the lessor's power to make the lease. We fail to perceive upon what ground the Curtis act can be said to have released the lessee from his promise to surrender the possession of the demised premises to the lessor at the end of his term, pursuant to his agreement. The act contains no express provision that tenants who had made improvements on leased property should be so released from their engagements, and we are not inclined to insert such a provision by construction. It is true that the act concedes to the owner of improvements upon any town-site lot the preference right to purchase the lot after the town site has been surveyed and platted and the lots have been appraised, on making certain specified payments within a certain period; but it does not appear in the present instance that any of these acts have been done, or that the time has arrived when a purchase can be effected. If it has arrived, it is by no means clear that the lessee is the owner of the improvements which he made during his term. The lease did not provide that the improvements made by the lessee should be esteemed his property, but only that "said property shall be delivered to said Washington upon his paying or satisfying said James Fraer or his assignees for all improvements put thereon while the same was so rented to said James Fraer." In other words, the lease secured to the lessee the right to retain possession until the lessor had reimbursed him for moneys expended in making improvements. In view of the known situation in the Indian Territory it may be that the lessor, being a member of the Chickasaw tribe, and entitled to occupy the lot in controversy, put the lessee in possession in the expectation that he would make certain improvements for the benefit of the lessor and practically at his expense, so as to entitle the lessor to purchase the lot, when the town site had been located and surveyed and the lot had been appraised, according to the plan outlined in the Atoka agreement, which had been executed before the lease was signed. In the absence of an express provision in the lease severing the improvements from the realty and declaring that they should be and remain the property of the lessee, it may well be that they became a part of the freehold according to the general rule that one who erects a permanent structure on land makes it a part of the land. It is unnecessary, however, on the present occasion, to determine who, within the meaning of the Curtis act, is the owner of the improvements that have been erected by the lessee, so as to entitle him, when the proper time arrives, to purchase the lot. The question now at issue is whether the Curtis act, as soon as it was passed, relieved the lessee from his promise to restore the possession of the lot to the lessor at the end of his term on being reimbursed for his improvements. This question, in our judgment, should be decided in the negative. It is certain, we think, that Congress did not intend that white men who had obtained temporary possession of town-site lots or land in the Indian Territory from Indians by

means of leases should make use of the possession so acquired to secure a fee-simple title to the demised property to the exclusion of Indian lessors to whom they had covenanted to restore the possession. Yet this would be the result if the effect of the Curtis act be as contended by the plaintiff in error. We are of opinion that the obligation of the lessee to restore possession remained the same after the passage of the Curtis act as before, and that nothing would free him from his contract obligation to surrender the possession of the demised premises to his lessor, save, perhaps, a purchase of the lot under the provisions of the Curtis act, after an appraisement thereof, should he be allowed, on application to the proper authorities, to make such a purchase. This court has heretofore held, in substance, that the Atoka agreement did not have the effect of annulling or abrogating all existing leases of town lots situated in the Choctaw and Chickasaw Nations. Ellis v. Fitzpatrick, 55 C. C. A. 260, 118 Fed. 430. The same view has been taken by the Court of Appeals in the Indian Territory. Ellis v. Fitzpatrick (Ind. T.) 64 S. W. 567, 568; Kemp v. Jennings, Id. 616. Moreover, we are advised that the Department of the Interior has ruled that, until town lots are disposed of by the commission appointed pursuant to the provisions of Act Cong. June 28, 1898, c. 517, 30 Stat. 495, "valid contracts made by parties for renting lots are not affected by said act." This ruling was made by the department in response to an inquiry whether the Curtis act absolved an occupant of a town-site lot, who had rented the same from an Indian, of his obligation to pay rent; and, while the ruling in question is not an authoritative exposition of the law, yet it is entitled to great consideration as expressing the views of that department of the government which is charged with the administration of the Curtis act, and has doubtless given all of its provisions careful consideration, besides being fully acquainted with the conditions now existing in the Indian Territory.

Another subordinate question which is presented by the record is whether Washington, the lessor, can maintain an action of unlawful detainer on the state of facts disclosed by his complaint, all of which, as we must presume, were established to the satisfaction of the court and jury, or whether he should have proceeded in equity to compel the lessee to accept payment for his improvements and convey them to the lessor. It seems to be urged by the plaintiff in error that the lessor should have obtained such a decree before suing in unlawful detainer. With respect to this question we conclude that there was no occasion for first seeking the aid of a court of equity. The question of possession was the only one involved in the case. When the lessee's term ended and the full value of the improvements made by him was tendered, and he declined to accept the sum tendered or to surrender possession of the demised premises pursuant to his covenant, his possession was thenceforth wrongful; in other words, he became guilty of an unlawful detainer. We do not understand that an ordinary lessor, who simply agrees with his tenant to pay him for any improvements made on the demised premises during the term, thereby disables himself from bringing an action of unlawful detainer, provided the tenant, at the end of his term, refuses to accept pay-

ment for his improvements and insists on holding possession. The effect of such an agreement in a lease is not to give the tenant an interest in the land which can only be divested by the decree of a court of equity, but rather to impose on the lessor another condition, to wit, the duty of paying for the tenant's improvements, or tendering payment therefor, before he can be restored to possession. If the question last noted was raised in the lower court in such a form that it may be considered here, we think it was rightly decided.

The final contention on the part of the plaintiff in error is based on section 4174 of Mansfield's Digest of the Statutes of Arkansas (Ind. T. Ann. St. 1899, § 2854), which provides, in substance, with respect to suits brought by a landlord to recover possession of property on account of the failure of his tenant during his term to pay rent, that, "if the defendant before judgment is given in such action, either tenders to the landlord or brings into court where the suit is pending all the rent then in arrears and all costs, all further proceedings in the action shall cease." It is claimed that about a year after this action was instituted the plaintiff in error offered to deposit in court a sum sufficient to pay the rent of the demised premises at the rate of $25 per year for the years 1898, 1899, and 1900, and asked to have the suit abated, which request was denied. The motion to abate the suit, the evidence in support of the motion, and the order made thereon are not made a part of the bill of exceptions, as they should have been to obtain a review of the trial court's action on appeal. Dietz v. Lymer, 10 C. C. A. 71, 61 Fed. 792. But, in any event, the section of Mansfield's Digest which is invoked has no application to a suit like the one at bar, where an action is brought against the tenant, not to recover possession during the term for nonpayment of rent, but to recover the possession of property unlawfully withheld by the defendant after his term has expired. In the latter class of cases, to which the suit at bar belongs, the statute invoked has no application.

No sufficient reasons have been shown for the reversal of the judgments below, and the same are accordingly affirmed.